## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Southern Division)

**TERRY L. PROCTOR,**
**6400 Addie Court**
**Clinton, Maryland 20735,**

     **Plaintiff,**

     **v.**

**THOMAS W. HARKER,**
**Acting Secretary, UNITED STATES**
**DEPARTMENT OF THE NAVY,**
**1000 Navy**
**Room 4D652**
**Pentagon**
**Washington, D.C. 20350,**

**SERVE:**
**Thomas W. Harker, Acting Secretary**

     **Defendant.**

**Civil Action No:**

**JURY TRIAL DEMANDED**

## COMPLAINT

**NOW COMES** Plaintiff, Terry L. Proctor, by and through his undersigned counsel, and, pursuant to Fed. R. Civ. P. 8 and 10, files this Complaint for damages.  Plaintiff states herein as follows:

### JURISDICTION AND VENUE

1.    This action is authorized and instituted pursuant to §§703 and 704 Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§2000e-2 and 2000e-3 and § 4 of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §623.  As this Complaint asserts claims arising under the laws of the United States, this Court has original jurisdiction over those claims.

2.     The claims described in this Complaint occurred within this judicial district and venue properly lies in this judicial district and division.  Defendant is a government employer that is subject to the jurisdiction of this Court.

## PARTIES

3.     Plaintiff, Terry L. Proctor, April, 6, 1960, is an African American male citizen of the United States of America and resides in the State of Maryland.

4.     Plaintiff is an employee protected by the Title VII and the ADEA.

5.     Defendant, Thomas W. Harker, is the Acting Secretary of the Department of the Navy ("Department") and is the designated representative of the Department.

## ADMINISTRATIVE PROCEDURES

6.     Plaintiff has a history of engaging in protected activity.  In February 2019, after he was non-selected    for    a    position,    Plaintiff    sought    to    file    an    internal EEO complaint, but the Agency would not permit such complaint to be filed.

7.     After Plaintiff was informed, on March 12, 2020, that his job was being assigned a lower grade, he initiated informal counseling with an Agency EEO counselor on March 20, 2020.  He filed a formal administrative EEO complaint on June 11, 2020.

8.     Defendant investigated the claims in the complaint of discrimination and, since June 2020, has been investigating the claims in that administrative complaint.  To date, it has not completed that investigation and has not issued a final agency decision on the complaint of discrimination.

9.     More than 180 days have elapsed from the date of filing of the initial complaint of discrimination and this Court has jurisdiction over the claims asserted in this Complaint.  42 U.S.C. § 2000e-16(c).

2

10.     All of Plaintiff's claims alleged in this Complaint were considered during the administrative investigation and they reasonably followed from the allegations contained in the administrative complaint of discrimination and retaliation.

11.     Plaintiff therefore invokes his right to bring this civil action in that he has satisfied all administrative and judicial prerequisites to the institution of this action.

## FACTS COMMON TO ALL CLAIMS

12. From November 1991, until April 30, 2020, when he retired involuntarily, Plaintiff worked in the Public Works Department ("PWD") at Defendant's Naval Surface Warfare Center, Indian Head ("Indian Head Facility"), Maryland.

13.     During his career in PWD, Plaintiff received several promotions and, in April 2020, was a Boiler Plant Supervisor I, a Grade 11 position.  Throughout his tenure in PWD, Plaintiff consistently maintained an "exceeds expectations" or "outstanding" performance levels.  Prior to Spring 2019, Plaintiff had a spotless disciplinary history.

14.     The Indian Head Facility is located on a sprawling, rural 3,500-acre peninsula in and about Indian Head, Maryland.  It includes building numbers 3162 through 3170 and 712.  The PWD is charged with supplying utilities and maintaining building services at those buildings.  The Indian Head Facility has two campuses, separated by Mattawoman Creek, a large body of water.  There are no bridges spanning Mattawoman Creek, connecting the two campuses.

15.     As a Boiler Plant Supervisor I, Plaintiff was responsible for ensuring that physical plant systems in IDF's buildings were functioning during his regular 12-hour work shifts.  Regularly during his shifts, he was required to make "rounds" involving inspections of the buildings spread throughout the Indian Head Facility.  Those rounds would require Plaintiff regularly to drive throughout the Indian Head Facility's two campuses.  In conducting those rounds, for the facilities

3

across Mattawoman Creek, Plaintiff was required to exit the larger campus' main gate and drive on public roads to the other campus, a 15 minute drive.

16.     In performing those rounds inspecting the far-flung facilities, Plaintiff used his government-assigned vehicle, but also used his personal vehicles.  Plaintiff, who regularly performed repairs on other personally-owned vehicles, regularly would drive those vehicles onto the Indian Head Facility, often would use those vehicles in performing those inspections.

17.     During the relevant period, Plaintiff's daughter, who did not own a private vehicle, also worked at the Indian Head Facility and regularly would use Plaintiff's personally-owned vehicles that Plaintiff had driven onto the Indian Head Facility.  As a result, Plaintiff's personal vehicles also would be moved during the course of the working day, both by Plaintiff and his daughter.

18.     When Plaintiff used either his government-assigned or personal vehicles to perform his inspections throughout the Indian Head Facility, Plaintiff never deviated from his professional obligations and did not use those vehicles on a "frolic and detour" from his professional job duties, beyond what was permitted by Defendant's policies and practices, such as using such vehicles during lunch or other work breaks.

19.     On December 18, 2018, Defendant posted on the USA Jobs website a vacancy for a Boiler Plant Operator Supervisor, WS-5402-13, a Grade 13 position in the PWD at the Indian Head Facility.

20.     Plaintiff, who was well-qualified for that position, applied for that vacancy.  As his application materials and resume reflected, Plaintiff had substantial experience in boiler plant operations and supervising crews.  During times that his supervisor was absent on annual or sick leave, Plaintiff actually had performed, without objection or incident, the duties of the Boiler Plant Operator Supervisor position.

4

21.     On January 4, 2019, Plaintiff was informed that he was not selected for that vacancy.  The person selected, Thomas Baldwin (Caucasian, under 40 years of age), had no prior experience in boiler plant operations and had a checkered employment history, including, destroying, through negligence, government equipment.  Additionally, Baldwin had less than 9  years' experience, compared to Plaintiff's unblemished 35-year exemplary experience in PWD, especially in boiler plant operations.  At the time of Baldwin's selection, Plaintiff was significantly better qualified for the Boiler Plant Operator Supervisor position than Baldwin, and the other applicants for that position.

22.     In early March 2019, Baldwin was selected for the Boiler Plant Operator Supervisor position, not because of his skills and experience, but rather, because he had been pre-selected for that position by PWD supervisors.  Those supervisors, who are Caucasian, including Mark Murphy and Lieutenant Commander William Moiles, selected Baldwin because of his race and age, despite the fact that Plaintiff was substantially better qualified than Baldwin.

23.     After learning of Baldwin's selection for the Boiler Plant Operator Supervisor position, Plaintiff, in January 2019, contacted Defendant's EEO representatives in an effort to file an administrative EEO complaint.  Those representatives refused to process Plaintiff's informal EEO complaint and he was precluded from filing a formal complaint regarding Baldwin's selection.

24.     After Baldwin's selection, Plaintiff continued to perform his job duties professionally and consistently with Defendant's policies and practices.

25.     On March 25, 2019, several weeks after his thwarted attempt to initiate EEO proceedings regarding the Baldwin selection, Gary Kendrick (Caucasian), PWD's Deputy Public Works Officer, issued Plaintiff a Proposed Removal from Federal Service ("NOPR"), ostensibly because Plaintiff had violated Defendant's time and attendance policies.  Plaintiff was charged with

abandoning his work station to engage in personal activities.  Defendant offered no proof that Plaintiff actually had abandoned his duty station or that he was engaging in personal activities during times when he should have been working.

26.     Other PWD employees, not in Plaintiff's protected classifications, and that had not engaged in activities protected under Title VII and the ADEA, including Thomas Baldwin, Edward Hayden (Caucasian, under 40 years of age), Shawn Butler (Caucasian, under 40 years of age), Kevin Wood (Caucasian, under 40 years of age) and Robert Kraft (Caucasian, under 40 years of age), had actually committed similar or more severe misconduct than Plaintiff was alleged to have committed, yet were not subject to disciplinary proceedings, including NOPRs similar to the NOPR that was issued to Plaintiff in March 2019.

27.     Plaintiff, who had not violated those policies, on April 25, 2019, submitted his response to the NOPR, vociferously opposed that action, disputing, not only the "merits" of the conduct cited in the NOPR, but also demonstrating that the timing of the NOPR violated Defendant's policies and practices and that he was being treated discriminatorily.

28.     Following Plaintiff's April 2019 response to the NOPR, no action was taken by Defendant on the NOPR.  No decision to remove Plaintiff ever was entered by Defendant.

29.     On March 12, 2020, Plaintiff received notification that his position had been reduced in status and grade, to Boiler Plant Equipment Mechanic, a Grade 10 position.  That action was taken by Rebecca Tittle (Caucasian).  No Caucasian and substantially younger comparators experienced similar reductions in their status and grade.

30.     Following that action described in ¶ 29, above, Plaintiff, on March 20, 2020, met with an EEO counselor to file an informal complaint of discrimination.  He informed the EEO counselor

about his thwarted efforts to file and EEO complaint in February 2019.  Unlike February 2019, the EEO counselor informed Plaintiff that she would process his complaint.

31.     Defendant's managers and supervisors were informed of that action.  Shortly after Plaintiff initiated EEO proceedings, he was confronted by Indian Head Facility managers and was presented with a settlement agreement.  He was told that he needed to sign that document immediately.  Plaintiff was informed that,  if did not do so, the Agency would immediately his reduction in rank and grade would be implemented immediately and that he would be terminated as recommended in the NOPR.  Alternatively, Plaintiff was informed that, rather than be terminated, he could elect to retire "voluntarily."

32.     Defendant made no effort to negotiate with Plaintiff and presented him with a "take or leave it" proposal.  In the settlement agreement, Defendant gave up nothing of value to secure Plaintiff's signature on that document.

33.     Defendant made no effort to negotiate with Plaintiff and presented him with a "take or leave it" settlement agreement.  In the proposed settlement agreement, Defendant gave up nothing of value to secure Plaintiff's signature on that document.  There was no valid and legal consideration supporting that proposed settlement agreement.

34.     Plaintiff never signed or assented to the proposed settlement agreement.  No valid, enforceable contract was entered into between Plaintiff and Defendant.

35.     On April 30, 2020, Plaintiff retired involuntarily.  At that time, Defendant through its discriminatory and retaliatory actions and the conduct of its managers had made the working conditions so intolerable that a reasonable worker would have been compelled to resign or retire.

36.     Substantially younger and Caucasian co-workers and co-workers that had not engaged in protected activities under Title VII and the ADEA, including but not limited to, Thomas Baldwin,

Edward Hayden, Shawn Butler, Kevin Wood and Robert Kraft, were not subjected to discriminatory and retaliatory actions by Michael Murphy (Caucasian, substantially younger than Plaintiff), William Bessette (Caucasian, substantially younger than Plaintiff), Gary Kendrick (Caucasian), Rebecca Tittle (Caucasian) and Lieutenant Commander William Moiles (Caucasian, substantially younger than Plaintiff).

37.     Plaintiff's protected activities protected under the Title VII and the ADEA resulted directly in the retaliatory adverse actions described in this Complaint, including, but not limited to, issuing the NOPR describing fictitious misconduct by Plaintiff, demoting Plaintiff and reducing his status and grade, foisting the settlement agreement on Plaintiff and forcing his involuntary retirement.

38.     Plaintiff's age and race, as well as his having engaged in protected activities were motivating factors in Defendant's adverse actions taken against him described in ¶ 36, above.

39.     The reasons articulated by Defendant for the adverse actions taken against Plaintiff are false and pretextual.

40.     Defendant took materially adverse actions against Plaintiff that would have dissuaded a reasonable employee from engaging in protected activities in violation of §704 of Title VII, 42 U.S.C. §2000e-3 and § 4(d) of the ADEA, 29 U.S.C. § 623(d).

41.     Plaintiff was treated disparately compared to employees not in his protected classifications, that had not engaged in protected activities, including Thomas Baldwin, Edward Hayden, Shawn Butler, Kevin Wood and Robert Kraft, who did not suffer adverse actions similar to those imposed on Plaintiff.

42.     As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT I

## UNLAWFUL DISCRIMINATION IN VIOLATION OF § 703 OF THE CIVIL RIGHTS ACT OF 1964

43.     Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 42 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

44.     Plaintiff is African American.

45.     Between January 4, 2019 and April 30, 2020, Defendant took a series of discriminatory adverse actions toward Plaintiff, including, but not limited to, non-selecting Plaintiff for the Boiler Plant Operator Supervisor position, issuing the NOPR on March 25, 2019, falsely accusing Plaintiff of misconduct, reducing Plaintiff's status and grade, coercing Plaintiff's signature on the settlement agreement and compelling his involuntary retirement.  Such actions were unlawful under Title VII, and resulted in Plaintiff suffering immediate economic losses and loss of job status and prestige.

46.     Plaintiff suffered the unlawful adverse actions described above.

47.     Similarly-situated Caucasian co-workers, not in Plaintiff's protected classification, including, Thomas Baldwin, Edward Hayden, Shawn Butler, Kevin Wood and Robert Kraft, unlike Plaintiff, actually engaged in misconduct similar to or worse than the misconduct for which Plaintiff was cited in the NOPR, yet were not subject to adverse actions similar to those imposed on Plaintiff.

48.     Plaintiff's race was a determining factor in the adverse actions described above.

49.     The explanations offered by Defendant for his actions are pretextual.

50.     Defendant's actions were unlawful and in violation of § 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

51.     As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT II

## UNLAWFUL RETALIATION IN VIOLATION OF § 704 OF THE CIVIL RIGHTS ACT OF 1964

52.     Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 51 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

53.     Plaintiff began activities protected by § 704(a) of Title VII, 42 U.S.C. §2000e-3(a) in February 2019, when he sought to file an administrative complaint of discrimination concerning his-non-selection to the supervisory position awarded to Thomas Baldwin.  Those protected activities have continued unabated to the present date.

54.     Plaintiff has suffered unlawful retaliation by Defendant for engaging in activities protected by Title VII, including, but not limited to, Defendant's issuing the NOPR on March 25, 2019, falsely accusing Plaintiff of misconduct, reducing Plaintiff's status and grade, coercing Plaintiff's signature on the settlement agreement and compelling his involuntary retirement  .  Such actions were unlawful under Title VII, and resulted in Plaintiff suffering immediate economic losses and loss of job status and prestige.

55.     Defendant took materially adverse actions against Plaintiff for his having engaged in protected activities.  Such actions would dissuade a reasonable worker from engaging in activities protected by Title VII, including opposing unlawful employment practices and participating in protected EEO activities.  Co-workers that had not engaged in protected activities and had engaged in misconduct similar to that for which Plaintiff was charged, including Thomas Baldwin, Edward

Hayden, Shawn Butler, Kevin Wood and Robert Kraft, were not similarly disciplined, reduced in status and grade or required to resign or retire.

56.    There is a strong causal connection between Plaintiff's protected EEO activities and the adverse actions taken against him.

57.    But-for Plaintiff's protected activities, Defendant would not have taken the adverse actions described above.

58.    Defendant's explanations for its actions are pretextual.

59.    Defendant retaliated against Plaintiff in violation of § 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

60.    As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT III

### UNLAWFUL DISCRIMINATION
### IN VIOLATION OF § 4 OF
### THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967

61.    Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 60 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

62.    Plaintiff is over 40 years of age and is a person protected by the ADEA.  The decision-makers that implemented the adverse actions taken against Plaintiff are substantially younger than Plaintiff.

63.    Between January 4, 2019 and April 30, 2020, Defendant took a series of discriminatory adverse actions toward Plaintiff, including, but not limited to, non-selecting Plaintiff for the Boiler

Plant Operator Supervisor position, issuing the NOPR on March 25, 2019, falsely accusing Plaintiff of misconduct, reducing Plaintiff's status and grade, coercing Plaintiff's signature on the settlement agreement and compelling his involuntary retirement. Such actions were unlawful under § 4 of the ADEA, 29 U.S.C. § 623, and resulted in Plaintiff suffering immediate economic losses and loss of job status and prestige.

64.     Plaintiff suffered the unlawful adverse actions described above.

65.     Similarly-situated co-workers, that either are substantially younger than Plaintiff or not in the protected age group, not in Plaintiff's protected classification, including, Thomas Baldwin, Edward Hayden, Shawn Butler, Kevin Wood and Robert Kraft, unlike Plaintiff, actually engaged in misconduct similar to or worse than the misconduct for which Plaintiff was cited in the NOPR, yet were not subject to adverse actions similar to those imposed on Plaintiff.

66.     Plaintiff's age was the determining factor in the adverse actions described above.

67.     The explanations offered by Defendant for his actions are pretextual.

68.     Defendant's actions were unlawful and in violation of § 4 of the ADEA, 29 U.S.C. § 623.

69.     Defendant's violation of the ADEA was willful, entitling Plaintiff to an award of liquidated damages.

70.     As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

**COUNT IV**

**UNLAWFUL RETALIATION
IN VIOLATION OF § 4(d) OF
THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967**

71.     Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 70 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

72.     Plaintiff began activities protected by § 704(a) of Title VII, 42 U.S.C. §2000e-3(a) in February  2019, when he sought to file an administrative complaint of discrimination concerning his-non-selection to the supervisory position awarded to Thomas Baldwin.   Those protected activities continued unabated to the present date.

73.     Plaintiff has suffered unlawful retaliation by Defendant for engaging in activities protected by § 4(d) of the ADEA, 29, U.S.C. § 623(d), including, but not limited to, Defendant's issuing the NOPR on March 25, 2019, falsely accusing Plaintiff of misconduct, reducing Plaintiff's status and grade, coercing Plaintiff's signature on the settlement agreement and compelling his involuntary retirement.   Such actions were unlawful under Title VII, and resulted in Plaintiff suffering immediate economic losses and loss of job status and prestige.

74.     Defendant took materially adverse actions against Plaintiff for his having engaged in protected activities.  Such actions would dissuade a reasonable worker from engaging in activities protected by the ADEA, including opposing unlawful employment practices and participating in protected EEO activities.  Co-workers that had not engaged in protected activities and had engaged in misconduct similar to that for which Plaintiff was charged, including Thomas Baldwin, Edward Hayden, Shawn Butler, Kevin Wood and Robert Kraft, were not similarly disciplined, reduced in status and grade or required to resign or retire.

75.     There is a strong causal connection between Plaintiff's protected EEO activities and the adverse actions taken against him.

76.     But-for Plaintiff's protected activities, Defendant would not have taken the adverse actions described above.

77.     Defendant's explanations for its actions are pretextual.

78.     Defendant retaliated against Plaintiff in violation of § 4(d) of Title VII, 29 U.S.C.§ 623(d).

79.     Defendant's violation of § 4(d) of the ADEA was willful, entitling Plaintiff to an award of liquidated damages.

80.     As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT V

## CONSTRUCTIVE DISCHARGE

81.     Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 79 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

82.     Defendant's discriminatory and retaliatory conduct continued unabated from January 2019, through April 2020.  Such conduct directly adversely affected Plaintiff's health and his ability to perform his job.

83.     Plaintiff's retirement was not voluntary.  The discriminatory and retaliatory conduct and harassment suffered by Plaintiff was so intolerable that a reasonable person would have been compelled to resign.

84.     Defendant intentionally and unlawfully discriminated and retaliated against Plaintiff.

85.    Defendant's managers deliberately made Plaintiff's working conditions intolerable.

86.    Plaintiff was constructively discharged from his position with Defendant.

**87.**    As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Honorable Court grant him the following relief, namely:

(i)   That this Court determines that the employment practices complained of in this Complaint are unlawful in that they violate Title VII and the ADEA.

(ii)  That Defendant pays Plaintiff a sum in excess of $300,000 for compensatory damages.

(iii) That Defendant pays Plaintiff's costs and expenses and reasonable attorney's fees as provided under federal laws in connection with this action.

(iv)  That this Court grants other and such further relief to the Plaintiff as it deems just and proper.

DATED: April 5, 2021.

Nathaniel D. Johnson (MD Bar #14729)
Attorney for Plaintiff
Employment Law Firm LLC
3261 Old Washington Road, Suite 2020
Waldorf, Maryland 20602
301 645-9103/888 492-9434 (fax)
ndjesquire@gmail.com