IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TERRY L. PROCTOR,                     *

        Plaintiff,              *

v.                              *       Civil No. TJS-21-868

THOMAS W. HARKER, Acting Secretary,  *
United States Department of the Navy,
                          *

        Defendant.
                  *    *    *    *    *    *

**MEMORANDUM OPINION**

Pending before the Court is the Motion to Dismiss or in the Alternative for Summary Judgment ("Motion") (ECF No. 13) filed by Defendant Thomas W. Harker, Acting Secretary, United States Department of the Navy (the "Navy") and the "Motion, Pursuant to Fed. R. Civ. P. 12(d) and 56(d), for Court to Deny or Defer Ruling on Defendant's Motion to Dismiss or in the Alternative for Summary Judgment and Permit the Parties to Engage in Discovery" ("Rule 56(d) Motion") (ECF No. 21) filed by Plaintiff Terry Proctor ("Mr. Proctor").[1] Having considered the submissions of the parties (ECF Nos. 13, 20, 21, 28 & 31), I find that a hearing is unnecessary. *See* Loc. R. 105.6. Because Mr. Proctor knowingly and voluntarily waived his right to sue the Navy, the Navy's Motion for Summary Judgment will be granted and Mr. Proctor's Rule 56(d) Motion will be denied.

---

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals, if an appeal is filed. ECF No. 10.

## I.      Background

Mr. Proctor brought this lawsuit under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e *et seq.* ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C.

§ 621 *et seq.* ("ADEA"). ECF No. 1. He alleges that the Navy discriminated against him, in

violation of Title VII, by not selecting him for a position to which he had applied, by falsely

accusing him of misconduct on the job, by reducing his job status and pay grade, and by coercing

him to sign a settlement agreement that forced his retirement. *Id.* ¶¶ 44-45. He alleges that his race

was a determining factor in the adverse actions that the Navy took against him and that the Navy

retaliated against him for engaging in protected activities. *Id.* ¶¶ 48, 52-60. He also alleges that the

Navy discriminated against him because of his age, in violation of the ADEA. *Id.* ¶¶61-70. The

Navy responded to Proctor's Complaint with the instant Motion, which is ripe for decision.

## II.      Discussion

Because the parties have submitted for consideration exhibits and matters outside the

pleadings, and because Mr. Proctor has had a reasonable opportunity to oppose the Motion, the

Court will treat the Navy's Motion as a motion for summary judgment. *See Gay v. Wall*, 761 F.2d

175, 177 (4th Cir. 1985); *see also Salami v. Jubiliee Assoc. of Md.*, No. TDC-20-3532, 2021 WL

2784632, at *3-4 (D. Md. July 2, 2021) (construing a motion to dismiss, or in the alternative motion

for summary judgment, as a motion for summary judgment because the movant relied on exhibits

and matters outside the pleadings); *Randolph v. Caruso Homes, Inc.*, No. RWT-13-2069, 2014

WL 4661985, at *2 (same).

### A.      Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict for the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Yet the "mere existence of a scintilla of evidence in support of the [opposing party's] position" cannot defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from those facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest on the mere allegations or denials of its pleading but must cite "particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

**B.     Factual Background**

The following facts are uncontroverted, alleged by Plaintiff, or construed in the light most favorable to him. Mr. Proctor is a Black man who was born in April 1960. ECF No. 1 ¶ 3. Mr. Proctor worked for the Public Works Department at the Navy's Naval Surface Warfare Center, Indian Head, Maryland ("Indian Head Facility") from 1991 until April 30, 2020, when he retired. *Id.* ¶ 12. The facility where Mr. Proctor worked "is located on a sprawling, rural 3,500-acre peninsula," with two campuses separated by the Mattawoman Creek. The Public Works

Department is charged with supplying utilities and maintaining building services at the buildings on the two campuses. *Id.* ¶ 14.

Before his retirement, Mr. Proctor was promoted to the position of Boiler Plant Supervisor I, a Grade 11 position. Between 1991 and 2019, Mr. Proctor had a "spotless disciplinary history," consistently achieving "exceeds expectations" or "outstanding" marks on his performance reviews. *Id.* ¶ 13. In his role as Boiler Plant Supervisor I, Mr. Proctor's responsibilities included "ensuring that physical plant systems . . . were functioning during his regular 12-hour work shifts." *Id.* ¶ 15. To perform his job, Mr. Proctor was required to make "rounds" between the various buildings on the two campuses, some parts of which were separated by a 15-minute drive. *Id*. Mr. Proctor sometimes used his government-assigned vehicle and sometimes used his personal vehicles to make these rounds. Mr. Proctor's daughter also worked at the Indian Head Facility, and she would sometimes drive his personal vehicles. According to Mr. Proctor, he "never deviated from his professional obligations and did not use [his personal or the government-assigned] vehicles on a 'frolic and detour' from his professional job duties," other than using the vehicles during lunch or work breaks, which was permitted. *Id.* ¶ 18.

In December 2018, Mr. Proctor applied for a vacant position posted for the Indian Head Facility (Boiler Plant Operator Supervisor, Grade 13). *Id.* ¶¶ 19-20. According to Mr. Proctor, he was well-qualified for this promotion because of his "substantial experience in boiler plant operations and supervising crews." *Id.* ¶ 20. Mr. Proctor had performed the duties of this position at times in the past. In January 2019, Mr. Proctor learned that he was not selected for the position. *Id.* ¶ 21. Instead, a white man named Thomas Baldwin, who was under 40 years old and, according to Mr. Proctor, "had no prior experience in boiler plant operations and had a checkered employment history, including destroying, through negligence, government equipment." *Id*. Mr.

4

Proctor alleges that the supervisors who selected Mr. Baldwin for the position are all white and that they selected Mr. Baldwin for the position because he was white and young. *Id.* ¶ 22.

After learning that he was not selected for the job, Mr. Proctor "contacted Defendant's EEO representatives in an effort to file an administrative EEO complaint." *Id.* ¶ 23 The Navy's EEO representatives "refused to process Plaintiff's informal EEO complaint and he was precluded from filing a formal complaint regarding Baldwin's selection." *Id.* Mr. Proctor continued to perform his job duties "professionally and consistently with Defendant's policies and practices." *Id.* ¶ 24.

On March 25, 2019, the Navy issued a Proposed Removal From Federal Service to Mr. Proctor. *Id.* ¶ 25; ECF No. 13-2. In the notice, the Navy charged Mr. Proctor with abandoning his work station to engage in personal activities during times when he was supposed to be working, and proposed that he be terminated. *Id.* Mr. Proctor responded to the Notice on April 25, 2019. *Id.* ¶ 27. He objected to his proposed removal, disputed the merits of the alleged misconduct, and noted that "the timing of the [Notice] violated Defendant's policies and practices and [suggested] that he was being treated discriminatorily." *Id.* Thereafter, the Navy took no immediate steps to proceed with the proposed formal discipline against Mr. Proctor. *Id.* ¶ 28.

On March 12, 2020, almost a year after the Navy notified Mr. Proctor of the proposed termination, Mr. Proctor learned that his position had been reduced in status and grade, to Boiler Plant Equipment Mechanic, Grade 10. Mr. Proctor alleges that his white colleagues did not experience similar reductions. *Id.* ¶ 29. On March 20, 2020, Mr. Proctor met with an EEO counselor to file an informal complaint of discrimination, and the EEO counselor processed his complaint. *Id.* 30.

Shortly after Mr. Proctor "initiated EEO proceedings," his managers presented a Settlement Agreement and Mutual Release to him ("Settlement Agreement"). *Id.* ¶ 31; ECF No. 13-3. They told him to sign the document or face an immediate reduction in his rank and grade, followed by a recommended termination. *Id.* They also told him that he could elect to retire rather than face termination. *Id.* In Mr. Proctor's view, this was a "take or leave it" proposal. *Id.* ¶ 32. He asserts that he "never signed or assented to the proposed settlement agreement."[2] *Id.* ¶ 34.

According to Mr. Proctor, he "retired involuntarily" on April 30, 2020. *Id.* ¶ 35. He alleges that the Navy and its agents "had made the working conditions so intolerable that a reasonable worker would have been compelled to resign or retire." *Id.* Mr. Proctor was the only person subject to this treatment; his white coworkers "were not subjected to discriminatory and retaliatory actions by" the Navy. *Id.* ¶ 36.

Mr. Proctor alleges that his protected activities under Title VII and the ADEA "resulted directly in the retaliatory adverse actions described in [the] Complaint." *Id.* ¶ 37. He also alleges that his age and race were motivating factors in the Navy's adverse actions against him and that any justifications for the Navy's behavior that it offers to the contrary are pretextual. *Id.* ¶¶ 38-39. He claims to have suffered damages as a result of the Navy's unlawful conduct. *Id.* ¶ 42.

## C.    Settlement Agreements are Enforceable Contracts

The Navy argues that it is entitled to summary judgment because Mr. Proctor waived his right to sue the Navy when he signed the Settlement Agreement. The Court will therefore begin with a review of the terms of the Settlement Agreement.

---

[2] The uncontroverted evidence shows that Mr. Proctor did sign the Settlement Agreement and that his attorney transmitted the signed agreement to the Navy.

Settlement agreements are enforceable as independent contracts, and "public policy considerations favor the enforcement of settlement agreements." *Alston v. TowneBank*, No. GJH-20-690, 2022 WL 971008, at \*6 (D. Md. Mar. 31, 2022) (internal quotation marks omitted); *Copeland v. Dapkute*, No. PWG-17-1566-PWG, 2018 WL 5619672, at \*5 (D. Md. Oct. 30, 2018) (explaining that a "settlement agreement is nothing more or less than a contract" and that "the question of whether to enforce a settlement agreement is governed by standard contract principles"); *Bernstein v. Kapneck*, 290 Md. 452, 459 (1981) ("[P]articularly in this era of burgeoning litigation, compromise and settlement of disputes outside of court is to be encouraged.").

In interpreting a contract, courts "seek to ascertain and effectuate the intention of the contracting parties," *Maslow v. Vanguri*, 168 Md. App. 298, 317-19 (2006), construing a contract "as a whole to determine the parties' intentions." *Sullins v. Allstate Ins. Co.*, 340 Md. 503, 508 (1995). Courts look mainly to the language of the contract itself to determine the intention of the parties, construing the "words consistent with their usual and ordinary meaning, unless it is apparent that the parties ascribed a special or technical meaning to the words." *Maslow*, 168 Md. App. at 318. "[C]ourts in Maryland 'have long adhered to the objective theory of contract interpretation, giving effect to the clear terms of agreements, regardless of the intent of the parties at the time of contract formation.'" *Id.* (quoting *Myers v. Kayhoe*, 391 Md. 188, 198 (2006)). When interpreting contracts, "the clear and unambiguous language of an agreement will not give way to what the parties thought the agreement meant or intended it to mean; where a contract is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed." *Bd. of Trustees of State Colleges v. Sherman*, 280 Md. 373, 380 (1977). A contracting party is not bound merely by the assumptions or beliefs of the other contracting party

but is instead bound by the contract itself. *Gill v. Computer Equip. Corp.*, 266 Md. 170, 179 (1972). Terms of settlement agreements providing for the release for legal claims "have been upheld when they are 'sufficiently definite.'" *Alston*, 2022 WL 971008, at *6 (quoting *4900 Park Heights Ave. LLC v. Cromwell Retail 1, LL*C, 246 Md. App. 1, 31, *cert. denied sub nom. 4900 Park Heights Ave. v. Cromwell Retail*, 469 Md. 655 (2020)).

To establish the existence of a valid contract, a plaintiff must show (1) an unrevoked offer made by one party and accepted by the other; (2) mutual assent by the parties to the material terms of the agreement; and (3) consideration. *Cnty. Comm'rs v. Forty West Builders, Inc.*, 178 Md. App. 328, 377 (2008). Consideration is "a benefit to the promisor or a detriment to the promisee." *Harford Cnty. v. Town of Bel Air*, 348 Md. 363, 382 (1998). It "necessitates that 'a performance or a return promise must be bargained for.'" *Chernick v. Chernick*, 327 Md. 470, 479 (1992) (quoting Restatement (Second) of Contracts § 71 (1981)). A performance is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise. Forbearance to exercise a right or pursue a claim, or an agreement to forbear, constitutes sufficient consideration to support a promise or agreement. *Id.* (internal quotation marks and citations omitted).

### D.     Mr. Proctor Released His Claims in the Settlement Agreement

On April 1, 2020, Mr. Proctor signed the Settlement Agreement (ECF No. 13-3). The Settlement Agreement, which the Navy signed on April 2, 2020, acts as a "full and final settlement of the Proposed Removal issued to [Mr. Proctor] on March 25, 2019," as well as "any and all claims against the Agency [that is, the Navy] that were, or could have been filed, against the Agency related to [Mr. Proctor's] employment." *Id.* at 1. By signing the Settlement Agreement, Mr. Proctor represented that he "fully underst[ood]" and had the opportunity to "thoroughly

review" the Agreement with his attorney and that he was voluntarily signing the agreement. *Id.* The Settlement Agreement "represents the entire agreement" between Mr. Proctor and the Navy. *Id.* It "constitutes a waiver of all complaints, grievance, appeals, or any other claims that were or could have been filed related" to Mr. Proctor's employment with the Navy, up to the date of the Settlement Agreement. *Id.* The parties to the Settlement Agreement entered into it "as an alternative to proceeding with the formal disciplinary process" against Mr. Proctor. *Id.*

In consideration for the mutual promises in the Settlement Agreement, Mr. Proctor: (a) acknowledged that he could have elected to proceed with the formal disciplinary process rather than entering into the Settlement Agreement; (b) agreed to accept a "Voluntary Change to Lower Grade, to the position of Boiler Plant Equipment Mechanic," effective March 29, 2020, and agreed that "no grievance, appeal, or any other complaint in any forum will be filed" about that change or his separation from the Navy; (c) agreed to contact a retirement counselor at the Navy Civilian Benefits Center and "begin the retirement application process no later than April 1, 2020"; (d) agreed to cooperate with the retirement counselor in processing his retirement application; (e) agreed to submit a complete retirement application by April 15, 2020; (f) agreed to a retirement date effective on or before May 1, 2020; (g) agreed to retire from the Navy no later than May 1, 2020, and to file "no grievance, appeal, or any other complaint nay any form . . . regarding his resignation or retirement" from the Navy; and (h) released the Navy "from any and all claims or demands" he may have made against the Navy relating to his employment and based on events that happened before the effective date of the Settlement Agreement, including a release of any rights (both known and unknown) under "Title VII . . ., which prohibits discrimination on the basis of race, color, national origin, religion, sex or retaliation; [and] the Age Discrimination in Employment Act, which prohibits age discrimination in employment." *Id.* at 1-2.

In turn, the Navy promised to (a) "[e]ffect a personnel action for Voluntary Change to Lower Grade of the employee to the position of Boiler Plant Equipment Mechanic" effective March 29, 2020; and (b) "[m]aintain the employee through the effective date of retirement [that is, until May 1, 2020] at his Adjusted Basic Pay of $34.15 per hour for the position of Boiler Plant Equipment Mechanic." *Id.* at 2.

By signing the Settlement Agreement, Mr. Proctor acknowledged that he had been advised, in accordance with the Older Workers Benefit Protection Act ("OWBPA"), *see* 29 U.S.C. § 626(f), to consult an attorney before signing the Settlement Agreement. *Id.*  He also acknowledged that he understood that he was "knowingly and voluntarily waiving rights and claims arising" under the ADEA as amended by the OWBPA. *Id.* And he acknowledged that he understood that he had "21 calendar days from the receipt of [the Settlement Agreement] to review and consider the Agreement before signing it." *Id.* at 3. The Settlement Agreement advised that Mr. Proctor would give his written acceptance no later than April 1, 2020, and that failure to do so would "result[] in automatic termination of [the] settlement offer." *Id.* The Settlement Agreement provided that after Mr. Proctor submitted a signed version of the Settlement Agreement to the Navy, he would have seven calendar days to revoke the agreement and that the Settlement Agreement would not become effective or unenforceable until after the seven-day revocation period had expired. *Id.* at 3.

Above the signature lines for the Navy representative and Mr. Proctor, the Settlement Agreement provided (in all capital letters):

> BY THEIR SIGNATURES BELOW, THE PARTIES KNOWINGLY AND VOLUNTARILY ENTER INTO THIS AGREEMENT. THE PARTIES ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THE TERMS OF THIS AGREEMENT. THE EMPLOYEE ACKNOWLEDGES THAT HE HAS READ THIS AGREEMENT, THAT HE UNDERSTANDS ALL OF THE TERMS OF THIS AGREEMENT, AND THAT HE IS VOLUNTARILY ENTERING INTO THE AGREEMENT. PLEASE READ THIS AGREEMENT

CAREFULLY BEFORE SIGNING. IT CONTAINS A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.

*Id.* at 3.

If it is valid, the Settlement Agreement's release provision bars the claims that Mr. Proctor has asserted against the Navy in this lawsuit. The parties do not dispute the meaning of the terms of the Settlement Agreement, nor do they dispute the implication of those terms if the Settlement Agreement is enforced. Instead, the dispute between the parties turns on whether the Settlement Agreement is valid and enforceable. Mr. Proctor argues that the Settlement Agreement should not be enforced against him for two reasons: it does not comply with the requirements of the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f)(1), and he did not knowingly and voluntarily enter into it.

### 1.    The Settlement Agreement Complies with OWBPA

A person may waive their right to bring an action under the ADEA, but the waiver must be knowing and voluntary. 29 U.S.C. § 626(f)(1). Under the OWBPA, a waiver will not be considered knowing and voluntary unless it satisfies certain minimum requirements. *Id.* In this case, the pertinent minimum requirements of the OWBPA are:

> (A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;
> (B) the waiver specifically refers to rights or claims arising under this chapter;
> (C) the individual does not waive rights or claims that may arise after the date the waiver is executed;
> (D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;
> (E) the individual is advised in writing to consult with an attorney prior to executing the agreement;
> (F)(i) the individual is given a period of at least 21 days within which to consider the agreement; . . . . [and]
> (G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the

agreement shall not become effective or enforceable until the revocation period has
expired[.]

*Id.*; *see also Cassiday v. Greenhorne & O'Mara, Inc.*, 220 F. Supp. 2d 488, 491 (D. Md. 2002).

Mr. Proctor argues that the Settlement Agreement cannot be considered knowing and
voluntary under the OWBPA because (1) his waiver of rights was not given in exchange for
"consideration in addition to anything of value to which" he was already entitled, 29 U.S.C. §
626(f)(1)(D), and (2) he was not given at least 21 days to consider the Settlement Agreement, *id.*
§ 626(f)(1)(F). ECF No. 20 at 12-17. These arguments are meritless.

First, there was sufficient consideration. "[A]s an alternative to proceeding with the formal
disciplinary process," ECF No. 13-3 at 1, which would have resulted in Mr. Proctor's immediate
termination, *see* ECF No. 28 at 5, the Navy permitted Mr. Proctor to continue working (though at
a reduced rate of pay) for about one month, until May 1, 2020. That the Navy allowed Mr. Proctor
to continue working for one month before his retirement, rather than immediately terminating him,
was itself sufficient consideration to support the validity of the Settlement Agreement. *Chernick*,
327 Md. at 480 ("Forbearance to exercise a right or pursue a claim, or an agreement to forbear,
constitutes sufficient consideration to support a promise or agreement."). But there is more. In
exchange for Mr. Proctor's assent to the Settlement Agreement, the Navy also offered him the
ability to "voluntarily" retire rather than face an involuntary termination. Mr. Proctor argues that
he was offered only a "Hobson's choice," and that he had no option but to sign the Settlement
Agreement. That he elected to sign the Settlement Agreement, however, shows that he placed
value on working for one additional month and leaving his position as a retiree rather than an
involuntarily terminated employee. For these reasons, I find that the Settlement Agreement is
supported by adequate consideration. *See Wastak v. Lehigh Valley Health Network*, 342 F.3d 281,
294 (3d Cir. 2003) (holding that a release was supported by adequate consideration under the

OWBPA because it provided something "'in addition' to what [the plaintiff] was entitled to upon his termination—nothing").

Mr. Proctor's second argument, that the Navy allowed him only 11 days to consider the Settlement Agreement instead of the 21 days required by the OWBPA, must also be rejected. The Navy has submitted uncontroverted evidence that it sent the Settlement Agreement to Plaintiff on March 12, 2020, which gave Mr. Proctor 21 days (including the day of March 12) to consider the Settlement Agreement, as required by OWBPA. ECF No. 28-1 (Declaration of Rebecca Tittle, a Labor and Employee Branch director for the Navy, stating that she emailed "an electronic version of the settlement agreement to Mr. Terry Proctor for his review" on March 12, 2020, and that he was "given until 1 April 2020, or 21 calendar days, to review the agreement"); ECF No. 28-2 (copy of the email sent from Rebecca Tittle to Mr. Proctor on March 12, 2020). In her declaration, Ms. Tittle notes that the Settlement Agreement that Mr. Proctor was provided on March 12, 2020, and which he signed, was "substantially similar to a settlement agreement that [Ms. Tittle] discussed with Mr. Proctor" in November 2019, and that was provided to him on November 25, 2019. ECF Nos. 28-1, 28-3. Thus, Mr. Proctor had more than four months to review the terms of the Settlement Agreement before signing it. In any event, because Mr. Proctor received a copy of the Settlement Agreement on March 12, 2020, he was "given a period of at least 21 days within which to consider" the Settlement Agreement. 29 U.S.C. § 626(f)(1)(F). His argument that the Settlement Agreement's release of claims is invalid under the OWBPA because he was only allowed 11 days to consider it is without merit.

Mr. Proctor does not argue that the Settlement Agreement fails to comply with any of the other minimum requirements of the OWBPA. In any event, the Court finds that the Settlement Agreement complies with all of the requirements of the OWBPA: it is a three-page document

written in plain, understandable language; it specifically describes the rights Mr. Proctor would waive by signing it; it did not require Mr. Proctor to waive any rights that arise after his signature; it is supported by adequate consideration; it advised Mr. Proctor to consult an attorney before signing; it allowed Mr. Proctor 21 days to consider its terms, and; it provided seven days following the execution of the agreement for Mr. Proctor to revoke it. 29 U.S.C. § 626(f)(1)(F). Accordingly, the Settlement Agreement satisfies the minimum statutory requirements for Mr. Proctor's assent to be considered knowing and voluntary under the OWBPA.

### 2.   Mr. Proctor's Assent was Knowing and Voluntary

While the Court has found that the Settlement Agreement complies with the OWBPA's minimum guidelines, the Settlement Agreement cannot "be deemed knowingly and voluntarily executed if the employee was under duress or otherwise intimidated into signing by the employer." *Cassiday*, 220 F. Supp. 2d at 492; *Taylor v. Northrop Grumman Sys. Corp.*, No. JKB-13-1832, 2013 WL 4781094, at *3 (D. Md. Sept. 5, 2013). This standard goes for Mr. Proctor's ADEA claim as well as his Title VII claims. Mr. Proctor urges the Court to consider the totality of circumstances in determining whether his execution of the Settlement Agreement was knowing and voluntary. ECF No. 20 at 16. He states that the "March 2020 meeting where he was tendered the Agreement was very intimidating" (he does not mention the fact that he received a copy of the Settlement Agreement in an email on March 12, 2020, and a "substantially similar" copy in November 2019), and that his managers "made clear" that he was expected to sign the agreement by April 1, 2020, and that he would have to retire by May 1, 2020. *Id.* at 16-17. He notes that the Settlement Agreement "even dictated each step that Plaintiff had to take in effecting his retirement." *Id.* He states that "there was no effort to negotiate with Plaintiff" (he does not specify whether he tried to negotiate with the Navy, either by himself or with help from counsel). He

repeats his argument (which the Court has rejected) that the Navy provided him "nothing of value in the Agreement." *Id.* Taken together with the limited time he had to consider the Settlement Agreement (which was at least 21 days, not 11 days as Mr. Proctor argues), he insists that the waiver cannot be found to be knowing and voluntary. *Id.*

Mr. Proctor's decision to sign the Settlement Agreement was knowing and voluntary. The terms of the Settlement Agreement were simple and direct: in exchange for his agreement to retire by May 1, 2020, and to release all claims he might have against the Navy, Mr. Proctor was allowed to continue working for one month without facing formal disciplinary proceedings, which he had been warned would result in his termination. Mr. Proctor had about four months to consider the general terms of the Settlement Agreement (because he was provided a "substantially similar" copy of the agreement in November 2019), and 21 days to consider the Settlement Agreement that he received on March 12, 2020, and ultimately signed on April 1, 2020. Mr. Proctor had decades of experience working for the Navy. ECF No. 1 ¶ 12. He consistently performed above the Navy's expectations and had substantial experience in supervisory roles. *Id.* ¶ 20. He had the acumen to evaluate the simple terms of the Settlement Agreement.

Of course, Mr. Proctor had the assistance of an attorney while he considered whether to sign the Settlement Agreement. On March 17, 2020, his attorney emailed Ms. Tittle, stating that he had "been retained to represent Mr. Proctor in matters related to his pending constructive discharge by your Agency." ECF No. 13-4. On March 24, 2020, Mr. Proctor submitted a "Designation of Representative" form, which stated that his attorney would represent him in connection with his "EEO Complaint." ECF No. 13-5. In a letter dated the same day, Mr. Proctor's attorney notified the Navy that he had been retained to represent Mr. Proctor in connection with Mr. Proctor's claims for "racial and age discrimination based upon disciplinary removal,

constructive discharge and retaliation," which arose from the Proposed Removal from Federal Service that the Navy transmitted to Mr. Proctor on March 25, 2019. ECF No. 13-6 at 1. The attorney's letter further obliquely referenced the Settlement Agreement in its statement that Mr. Proctor was being "compelled . . . to retire from federal employment service effective April 1, 2020." *Id.* And on April 1, 2020, Mr. Proctor's attorney emailed the signed Settlement Agreement to the Navy. ECF No. 13-7.

Mr. Proctor concedes that although he consulted with counsel around the time the Navy presented the Settlement Agreement to him, his attorney's letter to the Navy "noted only that he represented Plaintiff and is silent regarding the Agreement." ECF No. 20 at 17. This is disingenuous. The circumstances make clear that Mr. Proctor consulted his attorney about the Navy's intent to terminate him and the proposed Settlement Agreement. And Mr. Proctor's argument that the Navy rejected his attorney's attempts to renegotiate the terms of the Settlement Agreement on April 20, 2020, which was more than seven days after it had been signed, does not affect the Court's determination of whether Mr. Proctor's execution of the Settlement Agreement on April 1, 2020, was knowing and voluntary. The Settlement Agreement allowed Mr. Proctor seven days to revoke the agreement after he submitted it. That his attorney tried to revoke or renegotiate the agreement after the deadline had passed is irrelevant. The time for Mr. Proctor and his attorney to negotiate with the Navy over the terms of the Settlement Agreement was before he signed it. The time for Mr. Proctor to revoke the Settlement Agreement was within seven days of its submission.

For these reasons, considering the totality of circumstances, the Court finds that Mr. Proctor signed the Settlement Agreement knowingly and voluntarily. By doing so, he waived all claims he had against the Navy up to the date of the Settlement Agreement. All of the claims he

asserts in this lawsuit arose before the date that he signed the Settlement Agreement and are therefore barred by Mr. Proctor's release of those claims in the Settlement Agreement.

Because the Court finds that there is no genuine dispute as to any material fact and the Navy is entitled to judgment as a matter of law, the Motion for Summary Judgment (ECF No. 13) is **GRANTED**. The Court declines to consider the alternative arguments that the Navy advances in support of its Motion.

### E.      Rule 56(d) Motion

Mr. Proctor has also moved for an order allowing the parties to engage in discovery and for the Court to deny or defer ruling on the Navy's Motion for Summary Judgment, pursuant to Rule 56(d). ECF No. 21. Summary judgment is usually inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. de Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). But a party opposing summary judgment "cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To justify a denial of summary judgment on the grounds that additional discovery is necessary, the non-moving party must show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995).

Mr. Proctor argues that he "cannot fully oppose the factual matters asserted in support" of the Navy's Motion for Summary Judgment without discovery. ECF No. 21-1 at 2. He states that certain discovery is essential to justify his opposition to the Motion, including discovery about (1) his contacts with the Navy's EEO representatives, and all communications about these contacts, from January 2020 to the present; (2) the Notice of Proposed Removal issued to him on March 25, 2019; (3) the Settlement Agreement that he signed on April 1, 2020, and how it was presented to him; (4) his personnel file; (5) notices of proposed removal issued to other employees and any subsequent actions; (6) the Navy's policies and procedures for discipline, including those related to notices of proposed removal and removal, and; (7) discovery in the form of deposition testimony from the Navy's Rule 30(b)(6) designee and two other individuals.[3]

None of the discovery that Mr. Proctor seeks is "essential" for him to justify his opposition because none of the discovery could create a genuine dispute of material fact sufficient to defeat summary judgment. Mr. Proctor signed the Settlement Agreement while he was represented by counsel. The terms of the Settlement Agreement comply with the minimum requirements of the OWBPA, including the OWBPA's 21-day requirement and the requirement that any waiver be supported by consideration. The totality of circumstances indicates that Mr. Proctor's assent was given knowingly and voluntarily. And importantly, his attorney submitted the signed Settlement Agreement to the Navy. Neither Mr. Proctor nor his attorney moved to revoke the agreement within seven days of its submission. If facts exist that would show that Mr. Proctor's assent to the Settlement Agreement was not knowing and voluntary, those facts are necessarily already in the

---

[3] Mr. Proctor's Motion is supported by a Declaration, as required by Rule 56(d). His Motion also states that he needs to take discovery so that he may oppose the Navy's other arguments, but the Court need not reach this issue because it does not reach the Navy's other arguments.

possession of Mr. Proctor and his attorney. For the reasons explained above, the Court has already found that Mr. Proctor knowingly and voluntarily released his claims against the Navy. Mr. Proctor's Rule 56(d) Motion is **DENIED**.

## III.   Conclusion

Because Mr. Proctor knowingly and voluntarily released his claims against the Navy in the Settlement Agreement that he signed on April 1, 2020, the Navy is entitled to judgment as a matter of law. Judgment will be entered by separate order.

April 26, 2022                                               /s/
Date                                              Timothy J. Sullivan
                                                  United States Magistrate Judge